UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re

GAUCHO GROUP HOLDINGS, INC.

Debtor.

Case No. 24-21852-LMI

Chapter 11

_____ /

## DEBTOR GAUCHO GROUP HOLDINGS, INC.'S
## MOTION TO APPROVE SETTLEMENT WITH CREDITOR 3i, LP

Debtor, Gaucho Group Holdings, Inc. ("**Gaucho**" or "**Debtor**"), files this motion (the "**Motion**") pursuant to Federal Rule of Bankruptcy Procedure 9019, and states:

### PRELIMINARY STATEMENT[1]

1.        Gaucho has reached a settlement with Creditor, 3i, LP ("**3i**," together with Gaucho, the "**Parties**"),[2] that it believes will significantly benefit the estate and its creditors as detailed below and in the Settlement Term Sheet annexed hereto as **Exhibit A**. In short, this settlement will resolve any and all claims between 3i and Gaucho, including the following: (i) 3i's Proof of Claim totaling at least $8,022,667.19 against the estate; (ii) 3i's Motion to Dismiss; (iii) Gaucho's Motion to Subordinate Claim; (iv) the Secured Note Obligations;[3] (v) the Delaware Action; and (vi) all other pending matters

---

[1] Defined terms used but not defined in this Preliminary Statement shall have the meanings ascribed in this Motion.

[2] The Settlement Term Sheet includes the following parties: Gaucho (referred to in the Settlement Term Sheet as "**GGH**"), Gaucho Group, Inc. ("**GGI**"), Algodon Global Properties, LLC ("**AGP**"), InvestProperty Group, LLC ("**IPG**"), Gaucho Ventures I-Las Vegas, LCC ("**GV**"), The Algodon Recoleta, S.R.L. ("**AR SRL**"), Algodon Properties II S.R.L. ("**AP SRL**"), Algodon Wine Estates S.R.L. ("**AWE SRL**"), and Gaucho Development S.R.L. ("**GD SRL**"), and 3i (referred to in the Settlement Term Sheet as "**Lender**").

[3] The Settlement Term Sheet defines "**Secured Note Obligations**," as collectively, the obligations outstanding under: (i) that certain Securities Purchase Agreement, dated as of February 21, 2023 by and among GGH and the Lender; (ii) that certain Pledge and Security Agreement, dated as of February 21, 2023, by and among GGH, GGI, the Noteholder, and the Lender, pursuant to which GGH and GGI granted to the Lender, for itself and for the benefit of the Noteholder, a security interest in the Collateral; (iii) that certain Intellectual Property Security Agreement, dated February 21, 2023 by and among GGH and the Lender in favor of the Lender; (iv) that certain Senior Secured Convertible Note, dated as of February 21, 2023, by GGH in favor of the Lender as Noteholder in the original principal amount of $5,617,978; and (v) any other



and litigations between Gaucho and 3i.

2.    Under the terms of the settlement, Gaucho agrees to, among other things: (i) allowance of 3i's secured claim in this case in the amount of $5,500,000; (ii) pay 3i the total sum of $5,500,000 of which $500,000 will be paid on the Closing Date and the remaining $5,000,000 will be paid over the course of twelve months post-closing at the times set forth In the settlement; (iii) cause its subsidiaries, AGP, IPG, and AP SRL (collectively, the "**Settlors**"), to convey and transfer to the Trustee (the "**Trustee**") of a newly formed *Fideicomiso en Garantía* (the "**Security Trust**") all of Settlors' right, title and interest in and to 100% of the quota interests in AR SRL and all ancillary rights and benefits thereunder, or all right, title and interest in and to the Algodon Mansion hotel, or both; (iv) the entry of a consent judgment in favor of Defendants in the Delaware Action; (v) withdraw the Motion to Subordinate Claim; (vi) direct The Basile Law Firm that it may not refer to or use Gaucho and its case in its marketing materials; (vii) execute and deliver the agreements to terminate any and all purchase and sale agreements entered into between Gaucho and Maier Tarlow, Mordechai Tarlow, and Paula Zogala and the return of their respective deposits; (viii) execute and deliver a letter from Scott Mathis acknowledging the decision in the Delaware Action; and (ix) provide a full release to 3i (collectively, and as set forth in greater detail in the Settlement term Sheet, the "**Gaucho Settlement Terms**").

3.    In turn, 3i agrees to, among other things: (i) dismiss with prejudice the pending actions in the United States District Court for the Eastern District of New York and in the New York County Supreme Court; (ii) terminate the Independent Manager of AGP and IPG and retract the amended and restated limited liability company operating agreements for AGP and IPG; (iii) file UCC-3 terminations of 3i's liens on Gaucho's assets (including the pledge of interests in Gaucho's direct subsidiaries); and (iv) provide a full release to Gaucho (collectively, and as set forth in greater detail in the Settlement term Sheet, the "**3i Settlement Terms**," and together with the Gaucho Settlement Terms, the "**Settlement Terms**").[4]

---

document instrument and agreement executed by GGH, GGI, the Noteholder, GGH officers in their individual capacity, and/or the Lender in connection with the foregoing documents.

[4] For the avoidance of doubt, the Settlement Terms set forth in this Motion are intended as a summary and the terms of the Settlement Term Sheet attached as **Exhibit A** shall control.



4.      The outside closing date for the settlement is May 22, 2025.

5.      Gaucho believes that this settlement is eminently reasonable and in the best interest of the estate and its creditors.  Respectfully, it requests that the Court approve it.

## RELEVANT BACKGROUND

### I.      The Bankruptcy Case and Contested Matters

6.      On November 12, 2024 (the "**Petition Date**"), Gaucho commenced a voluntary case under Chapter 11 of the U.S. Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Florida, Miami Division (the "**Bankruptcy Case**").  Gaucho is authorized to continue to operate their businesses and manage its properties as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.  As of the date hereof, no trustee, examiner, or statutory creditors' committee has been appointed.

7.      3i is the largest creditor of the Debtor's estate.  On January 21, 2025, 3i filed proof of claim, Claim No. 8 in the amount of at least $8,022,667.19 (the "**Proof of Claim**"), in the Bankruptcy Case.

8.      On January 21, 2025, 3i filed its *Motion for Entry of Order Dismissing Debtor's Chapter 11 Case or, in the Alternative, Granting 3i, LP Relief from the Automatic Stay* [ECF No. 164] (the "**Motion to Dismiss**").

9.      On February 3, 2025, Gaucho filed its *Preliminary Response in Opposition to 3i, LP's Motion to Dismiss Or, In The Alternative, For Relief From The Automatic Stay* [ECF No. 189].

10.     On February 20, 2025, this Court entered the *Order Scheduling Evidentiary Hearing and Deadlines in Connection with Motion for Entry of Order Dismissing Debtor's Chapter 11 Case or, In the Alternative, Granting 3i, LP Relief from the Automatic Stay [ECF No. 164]* [ECF No. 246].  Pursuant to the Evidentiary Hearing Order, "[i]f a chapter 11 plan and disclosure statement are not filed with the Court by March 12, 2025, then the Court shall hear the Contested Matter by evidentiary hearing on March 28, 2025 at 9:30 a.m., and March 31, 2025 at 9:30 a.m."

11.     On February 27, 2025, this Court entered the *Notice to Parties Participating in Judicial Settlement Conference* [ECF No. 274] (the "**Judicial Settlement Conference**



**Notice"**).  Pursuant to the Judicial Settlement Conference Notice, the Parties were to participate in a Judicial Settlement Conference on March 17, 2025.

12.    On March 3, 2025, Gaucho filed its *Motion to Subordinate 3i, LP's Claim Pursuant to 11 U.S.C. 510(B)* [ECF No. 285] (the **"Motion to Subordinate Claim,"** and collectively with the Motion to Dismiss, the "**Contested Matters**").

13.    On March 5, 2025, this Court entered the *Order Setting Briefing Schedule and Hearing on Debtor's Motion to Subordinate 3i, LP's Claim Pursuant to 11. U.S.C. 510(b)* [ECF No. 307] (the **"Subordination Hearing Order"**).  Pursuant to the Subordination Hearing Order, the hearing on Debtor's Motion to Subordinate 3i's Claim was set for May 7, 2025.

14.    The Evidentiary Hearing Order, the Judicial Settlement Conference Notice, and the Subordination Hearing Order, set forth: (i) various deadlines, including the Exclusivity Deadline; and (ii) the dates for the Judicial Settlement Conference, the Evidentiary Hearing, and the Subordination Hearing.

15.    On March 12, 2025, Gaucho and 3i filed *Debtor Gaucho Group Holdings, Inc.'s and Creditor 3I, LP's Joint Motion to Extend Exclusivity and Solicitation Periods and All Deadlines and Continue All Hearings Pursuant to the Settlement Term Sheet* [ECF No. 316] (the "**Joint Motion**").  On March 13, 2025, this Court granted that Motion.

## II.    The Delaware Action and Other Pending Litigations

16.    There are pending litigations between Gaucho and 3i, including, without limitation, the cases styled as: (i) *Gaucho Group Holdings, Inc. v. 3i, LP, 3i Management, LLC, and Maier Joshua Tarlow*, Case No. 24-cv-00212-UNA, pending in the United States District Court for the District of Delaware (the "**Delaware Action**"); (ii) *3i, LP, 3i Management LLC and Maier Joshua Tarlow v. Gaucho Group Holdings, Inc.*, Case No. 1:2024-mc-03915, pending in the United States District Court for the Eastern District of New York; (iii) *3i, LP, 3i Management, LLC, and Maier Joshua Tarlow v. Gaucho Group Holdings, Inc.*, Case No. 2:24-mc-03929-NJC, pending in the United States District Court for the Eastern District of New York; (iv) *3i, LP v. Gaucho Group Holdings, Inc. and Gaucho Group, Inc.*, Index No. 652908/2024, pending in the New York County Supreme Court; and (v) *3i, LP v. Gaucho Group Holdings, Inc.*, Index No. 653080/2024, pending



in the New York County Supreme Court (collectively, the "**Litigations**").

### III.    The Settlement Term Sheet

17.    On March 12, 2025, the Parties executed a term sheet setting forth the terms for the settlement between Gaucho and 3i (the "**Settlement Term Sheet**"). A copy of the Settlement Term Sheet is attached as **Exhibit A**.

18.    The Settlement Term Sheet contemplates a comprehensive settlement between the Parties regarding the Proof of Claim, the Secured Note Obligations, the Contested Matters, the Bankruptcy Case, the Litigations, and all other disputes between the Parties (the "**Settlement**"). The Settlement is subject to the execution and delivery by the Parties of the definitive documents, as defined in the Settlement Term Sheet, and Bankruptcy Court approval. The terms and conditions of the Settlement shall be set forth in a "**Settlement Agreement**" executed by the Parties.

### RELIEF REQUESTED

19.    Gaucho respectfully requests that the Court approve the Settlement between it and 3i, the terms of which are set forth in the Settlement Term Sheet attached as **Exhibit A**.

20.    This Settlement Terms, as set forth herein and in the Settlement Term Sheet, will resolve any and all Claims between Gaucho on one hand, and the largest creditor in the Debtor's estate, 3i, on the other hand, including, but not limited to, the following: (i) the Proof of Claim; (ii) the Secured Note Obligations; (iii) the Contested Matters; (iv) all Claims set forth in the Delaware Action; and (v) all Claims set forth in the Litigations.

21.    Bankruptcy Rule 9019(a) provides: "On motion . . . and after a hearing on notice to creditors, the debtor . . . and to such other entities as the court may designate, the court may approve a compromise or settlement." As this Court has previously found, "approval of a settlement in a bankruptcy proceeding is within the sound discretion of the Court, and will not be disturbed or modified on appeal unless approval or disapproval is an abuse of discretion."[5]

---

[5] *In re Arrow Air, Inc.*, 85 B.R. 886, 891 (Bankr. S.D. Fla. 1988) (Cristol, J.) (citing *Rivercity v. Herpel* (*In re Jackson Brewing Co.*), 624 F.2d 599, 602-03 (5th Cir. 1980); *Anaconda-Ericsson, Inc. v. Hessen* (*In re*



22.     The test is whether the proposed settlement "falls below the 'lowest point in the range of reasonableness.'"[6]

23.     According to the United States Eleventh Circuit Court of Appeals, when a bankruptcy court decides whether to approve or disapprove a proposed settlement, it must consider: (a) the probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.[7]

### A. The Probability of Success in the Litigation.

24.     While Gaucho is confident that it could succeed on one or more of its claims and obtain a finding that 3i's claims are without merit (which, of course, 3i does not agree), Gaucho also recognizes that there is a risk in litigation, that the claims are complex, and that 3i would continue to vigorously defend its claims.  The ultimate outcome remains uncertain.

### B. The Difficulties, if any, to be Encountered in the Matter of Collection.

25.     Even if Gaucho were to prevail, there are significant challenges to continuing the litigation including, but not limited to, the continuing cost and financial drain of the Litigations, this Bankruptcy Case and any appeals relating thereto.

### C. The Complexity of the Litigation Involved, and the Expense, Inconvenience and Delay Necessarily Attending It.

26.     Gaucho recognizes that continued litigation with 3i would involve significant risk, expense, delay, and inconvenience to the estate.  The underlying issues arising from the Contested Matters and the Delaware Action are complex and have been – and would continue to be – expensive to pursue as they require further and extensive briefing, discovery, evidentiary hearings, and appeals.  Therefore, this factor strongly favors approval of the Settlement Term Sheet.

---

*Teltronics Servs., Inc.)*, 762 F.2d 185, 189 (2d Cir. 1985); *In re Prudence Co.*, 98 F.2d 559 (2d Cir. 1938), cert. denied sub nom. *Stein v. McGrath*, 306 U.S. 636 (1939)).

[6] *Arrow Air*, 85 Bankr. 891 (quoting *Teltronics Servs.*, 762 F.2d 189; *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir.), cert. denied, 464 U.S. 822 (1983)).

[7] *Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II. Ltd.)*, 898 F.2d 1544, 1549 (11th Cir. 1990).  *See Jackson Brewing*, 624 F.2d 602, quoted in *Arrow Air*, 85 B.R. 891.



**D. The Paramount Interest of the Creditors and a Proper Deference to Their Reasonable Views in the Premises.**

27.     Gaucho firmly believes that the Settlement Term Sheet is in the best interests of the estate and its creditors.  3i currently holds a $8,022,667.19 secured claim that encompasses all the assets of the estate, putting at risk any potential recovery for creditors and stockholders.  The proposed settlement, while requiring a settlement payment of $5,500,000, will permit Gaucho to focus on the many growth opportunities that the changing and rapidly improving Argentinian market now provides.

28.     Accordingly, Gaucho believes this Settlement is eminently reasonable and should be approved.

WHEREFORE, Gaucho respectfully requests that the Court grant this Motion, approve the proposed settlement between Gaucho and 3i, and grant such other and further relief as this Court deems appropriate.

Dated: March 14, 2025                    Respectfully submitted,

SALAZAR LAW
*Counsel for Gaucho Group Holdings, Inc.*
2121 S.W. 3rd Avenue, Suite 200
Miami, Florida 33129
Phone: (305) 374-4848
Fax: (305) 397-1021
Primary Email:  Luis@Salazar.Law
Primary Email: Ceide@Salazar.Law
Secondary Email: Lee-Sin@Salazar.Law

By:____/s/ Luis Salazar_____
          Luis Salazar
          Florida Bar No. 147788
          Jose Ceide
          Florida Bar No. 15937
          Lorenzo Lorenzo, Jr.
          Florida Bar No. 88718



## CERTIFICATE OF SERVICE

I hereby certify that on March 14, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the Service List, either via transmission of Notices of Electronic Filing generated by CM/ECF or by first class U.S. mail for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing, and all creditors by first class U.S. mail.

/s/  Luis Salazar
_____
Luis Salazar



## SERVICE LIST

Electronic Mail Notice List:

- **Lara R Fernandez**   lfernandez@trenam.com, mmosbach@trenam.com; mwoods@trenam.com; lfernandez@ecf.courtdrive.com; mspivak@trenam.com; mwoods@ecf.courtdrive.com; mmosbach@ecf.courtdrive.com
- **Dan L Gold**   Dan.L.Gold@usdoj.gov
- **Lance Bergmann Melamud**   LMelamud@grsm.com
- **Office of the US Trustee**   USTPRegion21.MM.ECF@usdoj.gov
- **Clay B Roberts**   croberts@bergersingerman.com, efile@bergersingerman.com; efile@ecf.courtdrive.com
- **Luis Salazar**   Luis@Salazar.Law; luis-salazar-4791@ecf.pacerpro.com; Ceide@salazar.law; Lee-Sin@Salazar.Law; Suarez@Salazar.Law; Lorenzo@Salazar.Law; MSalazar@Salazar.Law
- **Paul Steven Singerman**   singerman@bergersingerman.com, efile@bergersingerman.com; efile@ecf.courtdrive.com


Manual Notice List:

**Victoria Bantz**
Burns, Figa & Will, P.C.
6400 S. Fillers Green Circle
Suite 1000
Greenwood Village, CO 80111

**Eric Benzenberg, Esq.**
Basile Law Firm, P.C.
390 N. Broadway, Suite 140
Jericho, NY 11753

**Daniel J. Brown, Esq.**
McCarter & English, LLP
405 North King Street, 8th Floor
Wilmington, DE 19801

**Jennifer Furey**
Goulston & Storrs PC
One Post Office Square
25th Floor
Boston, MA 02109



**Brendan M. Gage**
GOULSTON & STORRS PC
One Post Office Square, 25th Floor
Boston, MA 02109

**Nathaniel R.B. Koslof**
GOULSTON & STORRS PC
One Post Office Square, 25th Floor
Boston, MA 02109

**Douglas B. Rosner**
GOULSTON & STORRS PC
One Post Office Square, 25th Floor
Boston, MA 02109

**Mitchell Watt**
CBIZ, Inc.
750 Third Ave.,
11th Floor
New York, NY 10017



Label Matrix for local noticing
113C-1
Case 24-21852-LMI
Southern District of Florida
Miami
Fri Mar 14 13:55:44 EDT 2025

Argentina Strategic Opportunity Fund, LLC

3i Management, LLC
c/o Paul Steven Singerman, Esq.
Berger Singerman LLP
1450 Brickell Avenue
Suite 1900
Miami, FL 33131-5319

Fairdinkum Consulting
c/o Lance Melamud, Esq.
Gordon Rees Scully Mansukhani
100 SE Second Street, Suite 3900
Miami, FL 33131-2153

3i, LP
c/o Paul Steven Singerman, Esq.
Berger Singerman LLP
1450 Brickell Avenue
Suite 1900
Miami, FL 33131-5319

Gaucho Group Holdings, Inc.
112 NE 41st St., Ste. 106
Miami Beach, FL 33139

3i, LP
Attn: Maier J. Tarlow
2 Wooster St., Floor 2
New York, NY 10013-2258

3i, LP
c/o Douglas B. Rosner, Esq.
Goulston & Storrs PC
One Post Office Square, 25th Floor
Boston, MA 02109-2115

AMEX
Attn: Bankruptcy Noticing
PO Box 650448
Dallas, TX 75265-0448

Abraham Katz
3175 Commercial Ave.
Northbrook, IL 60062-1915

Allen Notowitz
2710 Victoria Manor
San Carlos, CA 94070-4348

Brandon Lynch
201 SE 2nd Ave., Apt. 1111
Miami, FL 33131-2227

Brian Stern
52 Wooster St., # 2
New York, NY 10013-2229

Broadridge
750 Third Ave., 10th Floor
New York, NY 10017-2703

(p)BROADRIDGE FINANCIAL SOLUTIONS
1155 LONG ISLAND AVENUE
EDGEWOOD NY 11717-8309

Burns, Figa & Will, P.C.
Attn: Victoria Bantz, Esq.
6400 S. Fiddlers Green Cir., Ste. 100
Greenwood Village, CO 80111-4953

Continental Stock Transfer
135 Fifth Ave., 10th Floor
New York, NY 10010-7101

Cory Bataan
2425 Joel Dr.
Bellmore, NY 11710-2111

Dataccuity
2001 NE Aloclek Dr. M079
Hillsboro, OR 97124-8050

Eric Stear
215 West 105th Street, Apt.2F
New York, NY 10025-3958

Fairdinkum Consulting
15 East 32nd St., 9th Floor
New York, NY 10016-5570

Fairdinkum Consulting
c/o Lance Melamud, Esq.
Gordon Rees Scully Mansukhani
100 SE Second Street, Suite 3900
Miami, FL 33131
LMelamud@grsm.com  33131-2153

G.R. Reid Associates, LLP
7600 Jericho Tpke., Ste. 400
Woodbury, NY 11797-1705

Gaucho Group, Inc.
1111 Lincoln Road, Suite 500
Miami Beach, FL 33139-2439

Greg Gassoso
126 Gatling Pl., Apt. 3B
Brooklyn, NY 11209-6452

Gregory Johnson
1127 Somerset Lane
Newport Beach, CA 92660-5630

Greissy Pantaleon
6192 Pine Lane
Douglasville, GA 30135-2255

IRS
PO Box 7346
Philadelphia, PA 19101-7346

JLAL
4221 Way Out West Dr., Ste. 100
Houston, TX 77092-1455

Jack Laschever
181 Soundview Ave.
Rye, NY 10580-2303

Jacquelyn Cintron
715 Avenue C, Apt. 6
Bayonne, NJ 07002-2836

Jacquelyn Fresse
715 Ave. C, Apt. 6
Bayonne, NJ 07002-2836

James Dixon
16232 Headlands Cir.
Anchorage, AK 99516-7561

James Muir
7614 McGroarty St.
Tujunga, CA 91042-2610

Jerre Hills
21005 Hwy. 30
Filer, ID 83328-5544

Jim Hamaker
860 Grove Vale Dr.
Prosper, TX 75078-1555

John I. Griffin
4221 Way Out West Dr., Ste. 100
Houston, TX 77092-1455

John Raffaeli
5 Miller Rd.
Pound Ridge, NY 10576-2205

Kate Roggio Buck, Esq.
405 N. King Street
8th Floor
Wilmington, DE 19801-3773

Kenneth Downing
216 Pico Blvd. #16
Santa Monica, CA 90405-1023

Kenneth Johnson
17 N. San Francisco St., Ste. 3A
Flagstaff, AZ 86001-5236

Larry Schmalz
733 N. Carbon City Rd.
Paris, AR 72855-4700

Marcum LLP
750 Third Ave., 11th Floor
New York, NY 10017-2716

Maria Echevarria
14 Benmore Terr.
Bayonne, NJ 07002-1916

Mark Shatz
5453 Pond Bluff Ct.
West Bloomfield, MI 48323-2441

Marty Bataan
25 Claredon Dr.
Valley Stream, NY 11580-2503

Matias Mazza
910 West Ave., Unit 1432
Miami Beach, FL 33139-5219

McCarter & English
100 Mulberry St.
Newark, NJ 07102-4056

McCarter & English, LLP
c/o Daniel Brown
405 North King Street
8th Floor
Wilmington, DE 19801-3715

Meline Doodnauth
17 Vallata Pl.
Edison, NJ 08820-1689

Michael McCormack
3 Reading Ct.
Trophy Club, TX 76262-5588

Niels-Ole Staehr
28633 Meadowmist Dr.
Rancho Palos Verdes, CA 90275-3336

Office of the US Trustee
51 S.W. 1st Ave.
Suite 1204
Miami, FL 33130-1614

PORT WASHINGTON IMPORT, LLC D/B/A/ SEAVIEW I
48 Harbor Park Drive
Port Washington, NY 11050-4653

Parnasa Tova
255 Aragon Ave., 2nd Fl.
Coral Gables, FL 33134-5059

Petros Nikolinakos
1090 Ramser Dr.
Watkinsville, GA 30677-6950

Pharos Advisors
299 Market St., Ste. 440
Saddle Brook, NJ 07663-5312

RBSM LLP
805 Third Avenue
SUITE 1430
New York, NY 10022-7513

Rick Stear
215 West 105th St., Apt. 2F
New York, NY 10025-3958

Robert Mills
29 Montelago #13
Henderson, NV 89011-3200

Ronald Szegi
22614 Valerio St.
West Hills, CA 91307-1645

Ross Dixon
5627 Oberlin Dr.
San Diego, CA 92121-4781

Say Technologies LLC
155 Wooster St., Apt. 4F
New York, NY 10012-3159

Scott Mathis
1445 16th St., Ste. 403
Miami Beach, FL 33139-2184

Sharad Ghamande
703 Jones Creek
Evans, GA 30809-4037

Stanley Goldstein
16 Rockledge Ave., Apt 7F2
Ossining, NY 10562-6656

The Basile Law Firm P.C.
Attn: Mark R. Basile, Esq.
390 N. Broadway, Ste. 140
Jericho, NY 11753-2110

The Nasdaq Stock Market, LLC
151 W. 42nd St.
New York, NY 10036-6563

Theodoros Perides
388 Highland Ave.
Cliffside Park, NJ 07010-2711

Timothy Treharne
1355 17th St. NW, Apt. 519
Washington, DC 20036-1936

Victor Goetz
23 Hampton Ct
Skillman, NJ 08558-1808

Vincent Mariato
14 Deborah Loop
Staten Island, NY 10312-1392

Watkins Johnston
1100 Chandler St.
Montgomery, AL 36104-2004

Brendan M. Gage
GOULSTON & STORRS PC
One Post Office Square, 25th Floor
Boston, MA 02109-2115

Daniel J. Brown, Esq.
McCarter & English, LLP
405 North King Street, 8th Floor
Wilmington, DE 19801-3715

Douglas B. Rosner
GOULSTON & STORRS PC
One Post Office Square, 25th Floor
Boston, MA 02109-2115

Eric Benzenberg, Esq.
Basile Law Firm, P.C.
390 N. Broadway, Suite 140
Jericho, NY 11753-2110

Jennifer Furey
Goulston & Storrs PC
One Post Office Square
25th Floor
Boston, MA 02109-2115

Luis Salazar Esq.
2121 SW 3rd Ave., Ste. 200
Miami, FL 33129-1458

Mitchell Watt
CBIZ, Inc.
750 Third Ave.,
11th Floor
New York, NY 10017-2716

Nathaniel R.B. Koslof
GOULSTON & STORRS PC
One Post Office Square, 25th Floor
Boston, MA 02109-2115

Victoria Bantz
Burns, Figa & Will, P.C.
6400 S. Fillers Green Circle
Suite 1000
Greenwood Village, CO 80111-4957

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Broadridge Financial Solutions
1155 long Island Avanue
Edgewood, NY 11717

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

| | | |
|---|---|---|
| (u)Miami | (u)AMEX<br>**DUPLICATE CREDITOR** | (u)Cahill Gordon & Reindel LLP<br>**DELETED PER ECF NO.123-2** |
| (u)Goulston & Storrs PC<br>**DELETED PER ECF NO.123-2** | (u)Litman Asche & Gioiella, LLP<br>**DELETED PER ECF NO.123-2** | (d)RBSM, LLP<br>805 Third Ave., Ste. 1430<br>New York, NY 10022-7513 |
| (u)Richards, Layton & Finger, P.A.<br>**DELETED PER ECF NO.123-2** | End of Label Matrix<br>Mailable recipients    81<br>Bypassed recipients     7<br>Total              88 | |

**EXHIBIT A**



**G&S Revised Draft 3/12/25**
**CONFIDENTIAL**
**SUBJECT TO FRE 408 & EQUIVALENTS**
**FOR DISCUSSION PURPOSES ONLY**

### SETTLEMENT TERM SHEET

### March 12, 2025

This term sheet (this "*Term Sheet*") sets forth a summary of general terms for a settlement (the "*Settlement*") among Gaucho Group Holdings, Inc. ("*GGH*"), Gaucho Group, Inc. ("*GGI*"), Algodon Global Properties, LLC ("*AGP*"), InvestProperty Group, LLC ("*IPG*"), Gaucho Ventures I-Las Vegas, LCC ("*GV*"), The Algodon Recoleta, S.R.L. ("*AR SRL*"), Algodon Properties II S.R.L. ("*AP SRL*"), Algodon Wine Estates S.R.L. ("*AWE SRL*"), and Gaucho Development S.R.L. ("*GD SRL*", and together with GGH, GGI, AGP, IPG, GV, AR SRL, AP SRL, and AWE SRL, and any affiliate of the foregoing, the "*Gaucho Parties*", and each, a "*Gaucho Party*") and 3i, LP, as Collateral Agent and for itself and as a Noteholder (the "*Lender*"). The Gaucho Parties and the Lender are collectively referred to herein as the "*Parties*" and each is a "*Party*". Capitalized terms used but not defined herein have the meanings set forth in the SPA or the Security Agreement (each, as defined herein) as applicable. The Settlement will be in exchange for allowance in the amount set forth below of the Lender's proof of claim filed on in January 21, 2025 (the "*Claim*") in the case commenced by GGH on November 12, 2024 (the "*Petition Date*") in the United States Bankruptcy Court for the Southern District of Florida (the "*Bankruptcy Court*") under chapter 11 of title 11 of the United States Code (the "*Bankruptcy Code*"), *In re Gaucho Group Holdings, Inc.*, Case No. 24-21852-LMI (the "*Bankruptcy Case*") and will be consummated as part of a structured dismissal as set forth below.

This Term Sheet and the information contained herein are entitled to protection from any use or disclosure to any party or person pursuant to Rule 408 of the Federal Rules of Evidence and any other applicable rule, statute, or doctrine of similar import protecting the use or disclosure of confidential settlement discussions. Until publicly disclosed with the prior written agreement of the Lender, this Term Sheet shall remain strictly confidential and may not be shared with any other party or person other than the Parties and their retained professionals without the consent of the Lender.

Without limiting the generality of the foregoing, this Term Sheet and the undertakings contemplated herein are subject in all respects to the negotiation, execution, and delivery of the Definitive Documents (as defined herein).

**THIS TERM SHEET IS NOT AN OFFER OR A SOLICITATION WITH RESPECT TO ANY SECURITIES, LOANS OR OTHER INSTRUMENTS OR A SOLICITATION OF ACCEPTANCES OF A CHAPTER 11 PLAN WITHIN THE MEANING OF SECTION 1125 OF THE BANKRUPTCY CODE. ANY SUCH OFFER, ACCEPTANCE OR SOLICITATION WILL COMPLY WITH ALL APPLICABLE LAW, INCLUDING SECURITIES LAWS AND/OR PROVISIONS OF THE BANKRUPTCY CODE. NOTHING CONTAINED IN THIS TERM SHEET SHALL BE AN ADMISSION OF FACT OR LIABILITY. THE TRANSACTIONS DESCRIBED HEREIN WILL BE SUBJECT TO BANKRUPTCY COURT APPROVAL.**

**THE REGULATORY, TAX, ACCOUNTING, AND OTHER LEGAL AND FINANCIAL MATTERS AND EFFECTS RELATED TO THE TRANSACTIONS CONTEMPLATED BY THE SETTLEMENT OR ANY RELATED TRANSACTION OR SIMILAR TRANSACTION HAVE NOT BEEN FULLY EVALUATED. NOTHING HEREIN SHALL CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, AND EACH STATEMENT CONTAINED HEREIN IS MADE WITHOUT PREJUDICE, SOLELY FOR SETTLEMENT PURPOSES.**

CONFIDENTIAL
SUBJECT TO FRE 408 & EQUIVALENTS

| Term | Description |
|---|---|
| **Overview** | |
| **Overview of the Settlement** | This Term Sheet contemplates a comprehensive settlement between the Parties regarding the outstanding Secured Note Obligations (as defined below), the Litigations (as defined below), the Bankruptcy Case and all other disputes between the Parties.  The Settlement is subject to the execution and delivery by the Parties of the Definitive Documents and Bankruptcy Court approval. The terms and conditions of the Settlement shall be set forth in a "***Settlement Agreement***" executed by the Parties. |
| **Secured Note Obligations** | "***Secured Note Obligations***" means, collectively, the obligations outstanding under: (i) that certain Securities Purchase Agreement, dated as of February 21, 2023 (as otherwise amended, restated, supplemented, or otherwise modified from time to time, the "***SPA***") by and among GGH and the Lender (the "***Noteholder***"); (ii) that certain Pledge and Security Agreement, dated as of February 21, 2023 (as amended, restated, supplemented, or otherwise modified from time to time, the "***Security Agreement***"), by and among GGH, GGI, the Noteholder, and the Lender, pursuant to which GGH and GGI granted to the Lender, for itself and for the benefit of the Noteholder, a security interest in the Collateral; (iii) that certain Intellectual Property Security Agreement, dated February 21, 2023 (as otherwise amended, restated, supplemented, or otherwise modified from time to time, the "***IP Security Agreement***") by and among GGH and the Lender in favor of the Lender; (iv) that certain Senior Secured Convertible Note, dated as of February 21, 2023, by GGH in favor of the Lender as Noteholder in the original principal amount of $5,617,978 (as amended, amended and restated, supplemented or otherwise modified prior to the date hereof, the "***Secured Note***"); and (v) any other document instrument and agreement executed by GGH, GGI, the Noteholder, GGH officers in their individual capacity, and/or the Lender in connection with the foregoing documents (collectively, the "***Loan Documents***"). |
| **Litigations** | "***Litigations***" means, collectively, all pending litigations between a Gaucho Party and the Lender, including, without limitation, the cases styled as (i) *Gaucho Group Holdings, Inc. v. 3i, LP, 3i Management, LLC, and Maier Joshua Tarlow*, Case No. 24-cv-00212-UNA pending in the United States District Court for the District of Delaware (the "***Delaware Action***"), (ii) *3i, LP, 3i Management LLC and Maier Joshua Tarlow v. Gaucho Group Holdings, Inc.*, Case No. 1:2024-mc-03915, pending in the United States District Court for the Eastern District of New York, (iii) *3i, LP, 3i Management, LLC, and Maier Joshua Tarlow v. Gaucho Group Holdings, Inc.*, Case No. 2:24-mc-03929-NJC, pending in the United States District Court for the Eastern District of New York, (iv) *3i, LP v. Gaucho Group Holdings, Inc. and Gaucho Group, Inc.*, Index No. 652908/2024, pending in the New York County Supreme Court, and (v) *3i, LP v. Gaucho Group Holdings, Inc.*, Index No. 653080/2024, pending in the New York County Supreme Court. |
| **Description of Settlement Terms** | Upon execution of this Term Sheet, the Parties will:<br><br>(i)  not later than **March 12, 2025** jointly seek a 45-day extension of all deadlines in the Bankruptcy Case and Litigations, pending Bankruptcy Court approval of the Settlement, including to extend the exclusivity period for the Debtor to file a chapter 11 plan and to file an objection to GGH's motion to subordinate the Lender's Claim [Dkt. No. 284];<br><br>(ii)  the Debtor will seek authority to extend the terms of the ASOF DIP financing to continue to provide funding through the 45-day period on substantially the same terms and conditions as those approved by the Court on January 31, 2025, and subject to Lender's objection [Dkt. No. 178];<br><br>(iii)  not commence any new contested matter or adversary proceeding against any other Party in the Bankruptcy Case or assert additional claims or causes of action in the Litigations during the 45-day standstill period (as may be extended); and |

CONFIDENTIAL
SUBJECT TO FRE 408 & EQUIVALENTS

| Term | Description |
|------|-------------|
|  | (iv)    not later than **March 17, 2025** jointly prepare and file a motion to approve the Settlement in the Bankruptcy Court.<br><br>The material terms of the Settlement shall be as follows:<br><br>(i)    The Lender, for itself and the Noteholder(s), shall have an allowed secured claim in the amount of $5,500,000;<br>(ii)    GGH shall pay Lender a total of $5,500,000 in cash (the "***Cash Settlement***") in satisfaction of the Claim in three installments (each a "***Cash Settlement Installment***") as follows:<br>    1.  Pay Lender a total of $500,000 in cash at Closing;<br>    2.  Pay Lender a total of $1,000,000 in cash no later than 45 calendar days after the Closing; and<br>    3.  Pay Lender the remaining $4,000,000 in cash no later than 12 months after the Closing.<br>(iii)    At Closing, GGH shall cause AGP, IPG and AP SRL (collectively, the "***Settlors***") to convey and transfer to the Trustee (the "***Trustee***") of a newly formed *Fideicomiso en Garantía* (the "***Security Trust***") all of Settlors' right, title and interest in and to 100% of the quota interests in AR SRL and all ancillary rights and benefits thereunder, or all, right, title and interest in and to the Hotel (defined below) or both.  The Trustee will be an independent trustee domiciled in Buenos Aires, Argentine, acceptable to Lender and GGH.  The primary beneficiary will be the Lender and the secondary/residual beneficiary will be the Settlors.  The corpus of the Security Trust shall be the property of the Security Trust and the Settlors shall have no legal or equitable interest other than as a secondary/residual beneficiary.  The Parties shall agree on a minimum sale price of the Hotel in case of Default, which shall not be less than the Loan Balance (as defined below), once the appraisals of the Algodon Mansion are completed.<br>(iv)    The Gaucho Parties shall pay the fees, filing fees and costs incurred to prepare the Trust Agreement, grant the Trustee full power of attorney and transfer the quota interests or Hotel or both to the Security Trust, the fees and costs of the Trustee and any taxes, fees or charges payable to a governmental entity related to the creation of the Trust, the power of attorney and the transfer of the quota interests.<br>(v)    The Trustee shall be given the irrevocable power of attorney with sole power and authority to take any of the following actions for and on behalf of AR SRL:<br>    •  Execute and deliver the Hotel Management Agreement (as defined below);<br>    •  Consent to any financing or other money borrowed by AR SRL or secured by any of the assets of AR SRL (which shall also require the prior written consent of the Lender and AR SRL's organization documents will be amended to make clear that it does not have the authority to incur indebtedness for borrowed money or to grant liens or mortgages without the consent of the Trustee and the Lender);<br>    •  At the direction of Lender, after the occurrence of a Default under the terms of the Settlement, terminate the Hotel Management Agreement (defined below) and retain a new hotel manager, and on terms and conditions, acceptable to Lender;<br>    •  After the occurrence of a Default, retain a broker to market for sale the Hotel (defined below) on terms and conditions acceptable to Lender;<br>    •  After the occurrence of a Default, sell any and all right, title and interest in or to that certain real property and improvements known as the "Algodon Mansion" located in Buenos Aires, Argentina, together with all personal property, trade names and other related intellectual property (including, without limitation, trademarks and tradenames, websites, and social media accounts), contracts (including, without |

4907-3300-3540, v. 19

CONFIDENTIAL
SUBJECT TO FRE 408 & EQUIVALENTS

| Term | Description |
|------|-------------|
| | limitation, booking agreements) and leases, if any and to the extent designated to be assigned by the buyer, and any and all licenses and permits (if transferable) necessary to own, manage and operate the hotel, restaurant, bar and food and beverage services, and any and all keys, codes, passwords, books and records related to the operations of the Algodon Mansion hotel (collectively, the "***Hotel***") free and clear of all liens, claims, and encumbrances (such conveyance or transfer of the Hotel defined herein as the "***Hotel Transfer***");<br><br>• Pay from the gross proceeds of a sale of the Hotel, the broker fees and commissions, Trustee's fees and expenses, attorney's fees, stamp taxes and other out of pocket costs in connection with a sale (the gross proceeds less the foregoing costs and expenses shall yield the "***Net Proceeds***"), provided, that, AR SRL shall be solely liable for any income, capital gain or similar taxes related to, or arising from the sale of, the Hotel; and<br><br>• Distribute to the Lender and AR SRL the Net Proceeds in accordance with the terms of the Settlement and the Trust Agreement.<br><br>(vi)    Defaults shall include, inter alia, (i) GGH fails to pay Lender any Cash Settlement Installment when due under the terms of the Settlement, (ii) a material breach of the Hotel Management Agreement, (iii) any act or failure to act by GGH, AR SRL or any other Gaucho Party in violation of the terms of the agreement governing the Security Trust (the "***Trust Agreement***"), (iv) if AR SRL incurs any liability for money borrowed or grants a security interest in any of the assets of AR SRL without the consent of Lender, and (iv) any request by a Gaucho Party or an affiliate of a Gaucho Party to invalidate, unwind, avoid, enjoin, stay or otherwise challenge or oppose the formation of the Security Trust, the transfer of the quota interests and related rights and interests to the Trustee of the Security Trust, the appointment and powers of the Trustee and any actions taken by the Trustee to cause the sale of the Hotel and distribute the proceeds thereof in accordance with the terms of the Trust Agreement;<br><br>(vii)   Provided a Default has not occurred, promptly after Lender has received payment in full of the Cash Settlement, the Trustee shall transfer the quota interests in AR SRL to the Settlors in the same percentages as they held prior to the Closing of the Settlement;<br><br>(viii)  Upon the occurrence of a Default, the Lender shall be entitled to payment in full of the entire amount of Secured Note Obligations (which shall be not less than $8,022,667.19, plus all unpaid interest, costs, fees and expenses that accrued under the Loan Documents as of the date of execution of this Term Sheet), less any Cash Settlement Installments received by Lender (the "***Loan Balance***");<br><br>(ix)    Upon the occurrence of a Default, the Trustee shall, for and on behalf of AR SRL, (A) within 30 days after being directed by the Lender, retain a broker to market for sale the Hotel on terms and conditions acceptable to Lender, terminate the Hotel Management Agreement, retain a new hotel manager that is not affiliated with the Gaucho Parties under a new hotel management agreement acceptable to Lender, and (B) if the Trustee receives one or more offers that meet the minimum conditions set forth in the Trust Agreement, subject to Lender's ROFR Right (defined below), close on the sale of the Hotel for the highest and best offer received, provided, however, in the event the Trustee does not, within six months after the retention of a broker, close on the sale of the Hotel for a purchase price that will yield Net Proceeds equal to at least the Loan Balance, the Trustee shall, at the direction of the Lender, convey the Hotel to the Lender or its designee in satisfaction of the Loan Balance, in which case, GGH's obligation to pay the Loan Balance (costs, expenses, fees, commissions etc,.) , and all other obligations of the Parties under the Settlement, shall be deemed to have been satisfied (other than obligations that expressly survive under the terms |

CONFIDENTIAL
SUBJECT TO FRE 408 & EQUIVALENTS

| Term | Description |
|---|---|
| | and conditions of the Settlement (such as the non-solicitation, releases and GGH's obligation to dismiss the Bankruptcy Case)) and the Trustee shall thereafter transfer the quota interests in AR SRL to the Settlors in the same percentages as they held prior to the Closing of the Settlement. |
| | (x)    Lender shall have a right of first refusal, on not less than 30 days prior notice from the Trustee, to match the highest and best offer received by the Trustee for the Hotel (the "***ROFR Right***"). If the ROFR Right is timely exercised, the Trustee will convey the Hotel to Lender or its designee and the Lender may credit the Loan Balance against the purchase price being paid, with any excess Net Proceeds to be distributed by the Trustee to the Lender and AR SRL pursuant to the sharing arrangement below in clause (xi). If the ROFR Right is not timely exercised, then the Trustee may proceed with the closing of the sale of the Hotel in accordance with the terms and conditions of the highest and best offer received; |
| | (xi)    Upon the consummation of the sale of the Hotel, the Trustee shall distribute the Net Proceeds as follows: (i) first, to the Lender in the amount of the unpaid Loan Balance, (ii) with any excess to be paid 50% to the Lender and 50% to AR SRL; |
| | (xii)    The full and timely payment of the Cash Settlement shall be deemed to satisfy the Lender's Secured Note Obligations in full; |
| | (xiii)    A mutual release (other than with respect to each Party's obligations under the Settlement Agreement and Trust Agreement) in form and substance satisfactory to GGH and the Lender (the form to be attached to the Settlement Agreement); |
| | (xiv)    GGH agrees to entry of a consent judgment in favor of Defendants in the Delaware Action; |
| | (xv)    Lender dismisses with prejudice the Litigations described in the "Litigations" section of this Term Sheet in clauses (ii)-(iv) (with the terms and conditions of the Settlement to survive);. |
| | (xvi)    GGH shall direct The Basile Law Firm that it may not refer to or use GGH and its case in its marketing materials.; and |
| | (xvii)    The satisfaction of the Conditions to the Closing described below in the "Conditions" section of this Term Sheet. |
| **Terms and Conditions** | |
| **Closing** | "***Closing***" means the date on which each of the conditions (the "***Conditions***") to the effectiveness of the transactions contemplated by this Term Sheet shall have been satisfied or waived in accordance with their terms, which shall not be later than **May 22, 2025**.  The Closing will be in escrow.  In general, the Parties will execute and deliver to the Escrow Agent documents and instruments to which they are a signatory, together with any payments to be made at Closing,  After all the conditions to Closing are satisfied or waived by the Parties, the Escrow Agent shall release the signed documents, instruments and cash payments and file, record or deliver them in accordance with the terms of an Escrow Agreement. |
| **Conditions** | The material Conditions to the Closing shall be: |
| | (i)    Lender's satisfaction with the Hotel Diligence by no later than 30 days after execution of this Term Sheet; |
| | (ii)    Bankruptcy Court approval of the Settlement by a final, non-appealable order, which shall not be later than **April 11, 2025**; |
| | (iii)    Execution and delivery by the appropriate Parties of the documents and instruments necessary to consummate the transfer of the quota interests to the Security Trust, in addition to all right, title and interest in the Hotel; |
| | (iv)    Payment by GGH to Lender of $500,000 in cash as the first installment of the Cash Settlement; |

CONFIDENTIAL
SUBJECT TO FRE 408 & EQUIVALENTS

| Term | Description |
|---|---|
| | (v)  Execution and delivery of the agreements to terminate any and all purchase and sale agreements entered into between any one or more of the Gaucho Parties and Maier Tarlow, Mordechai Tarlow, and Paula Zogala and the return of their respective deposits in immediately available funds in the aggregate amount of US $107,900; <br><br> (vi)  In the Delaware Action, the filing of a proposed form of consent judgment in favor of Defendants in the Delaware Action; Lender dismissing with prejudice the Litigations described in the "Litigations" section of this Term Sheet in clauses (ii)-(iv); <br><br> (vii)  GGH withdrawal of the subordination motion in the Bankruptcy Case; <br><br> (viii)  UCC-3 terminations of Lender's liens on GGH's and GGI's assets (including the pledge of interests in GGH's direct subsidiaries); <br><br> (ix)  Termination of the Independent Manager of AGP and IGP and retraction of the amended and restated limited liability company operating agreements for such entities; <br><br> (x)  Execution and delivery of a new hotel management agreement in form and substance acceptable to GGH and Lender between AR SRL (to be signed by the Trustee under power of attorney) and the current manager of the Hotel that will be cross-defaulted with the Settlement Agreement (the "***Hotel Management Agreement***").  The Hotel Management Agreement will contain market standards for the maintenance and upkeep of the Hotel premises, limits on any reduction in nightly room rates, terms of employment for any employees of the Hotel or the manager and compliance with applicable law; <br><br> (xi)  Formal recognition of the Trustee as the SRL's power of attorney and granting Trustee the appropriate rights and powers, and that the SRL does not have the authority to incur indebtedness for borrowed money or to grant liens or mortgages on its assets without the consent of the Trustee and the Lender; and <br><br> (xii)  Execution and delivery of a letter from Scott Mathis to Lender in form and substance acceptable to Lender acknowledging the decision in the Delaware Action that GGH's claims and causes of action against the Lender did not have a likelihood of success on the merits, describing the negative consequences to GGH resulting from GGH's commencement of the Delaware Action (including the Bankruptcy Case, the incurrence of attorney's fees and costs, and the disruption of the Debtor's businesses) and advising any other entity or person doing business with 3i not to bring a similar action (the "***Mathis Letter***"). |
| **Case Dismissal Order** | "***Case Dismissal Order***" means a final order in form and substance acceptable to GGH and the Lender providing for the structured dismissal of the Bankruptcy Case.  The order approving the Settlement will include a decretal provision directing the Debtor to file by no later than **June 2, 2025** a motion for dismissal of the Bankruptcy Case. |
| **Mutual Releases** | Mutual releases of claims to the fullest extent permitted by applicable law with carveouts for obligations under the terms and conditions of the Settlement. |
| **Fees & Costs** | Each Party shall be responsible for such Party's costs and professional fees incurred to date and to negotiate, document and close the Settlement, including but not limited to attorney's fees. |
| **Cooperation** | The Parties will reasonably cooperate with each other in the consummation of the transactions contemplated under the Settlement.  The Gaucho Parties shall not, and shall not permit its counsel in the Delaware Action, agents or representatives to, publish or otherwise disseminate information concerning the Litigations other than disclosing copies of the Mathis Letter.  If requested by the Lender, Mr. Mathis agrees to participate with Lender in a call with any borrower or future borrower of Lender that is considering commencing or has commenced legal action against the Lender or any affiliate of the Lender challenging the validity, amount or enforcement of a loan arrangement. |

4907-3300-3540, v. 19

**CONFIDENTIAL**
**SUBJECT TO FRE 408 & EQUIVALENTS**

| Term | Description |
|---|---|
| **Hotel Diligence** | The Lender's obligation to proceed with the transactions contemplated under the Term Sheet is subject to confirmatory diligence on the Hotel (the "***Hotel Diligence***"), to be updated monthly through the Closing, including, without limitation: |
| | • Quarterly financials for the Hotel for the period March 1, 2023 – March 31, 2025 |
| | • AR/AP aging schedule as of February 28, 2025 |
| | • Detailed list of personal property assets |
| | • Title report |
| | • Schedule of capital lease obligations |
| | • Copies of all contracts, leases, licenses, permits |
| | • Copies of all notes, loan agreements, security agreements, mortgages and other |
| | • documents and instruments evidencing any money loaned to AR SRL or guaranteed by |
| | • AR SRL (or for which AR SRL is a co-obligor), together with current balances and loan |
| | • status |
| | • List of suppliers and vendors, including their current account status, AP and contracts |
| | • Employee list |
| | • List of banks used by the Hotel and for each, the accounts |
| | • Operating and capital budgets for 2025 |
| | • Environmental reports |
| | • Most recent survey |
| **Governing Law, Jurisdiction, and Venue** | This Term Sheet and the Settlement Agreement and the ancillary documents and instruments shall be governed by the laws of the State of Delaware or the applicable laws in Argentina where appropriate without regard to choice of law rules.  The Parties agree that the Bankruptcy Court shall retain jurisdiction to enforce the Settlement and all related agreements.  Venue for any disputes shall be the Bankruptcy Court. |
| **Third-Party Beneficiaries** | Except as specifically set forth or referred to herein, nothing herein is intended or shall be construed to confer upon any person or entity other than the Parties and their successors or assigns, any rights or remedies under or by reason of this Term Sheet. |
| **Counterparts** | This Term Sheet may be executed in any number of counterparts, all of which together will for all purposes constitute one and the same agreement.  Counterparts may be delivered via electronic mail (including pdf or any electronic signature complying with the U.S. federal ESIGN Act of 2000, e.g., www.docusign.com) or other transmission method and any counterpart so delivered shall be deemed to have been duly and validly delivered and be valid and effective for all purposes. |

*[remainder of page intentionally left blank; signature pages follow]*

**CONFIDENTIAL**
**SUBJECT TO FRE 408 & EQUIVALENTS**

**IN WITNESS WHEREOF**, the Parties hereto have executed and delivered this Term Sheet effective as of the date first set forth above.

**[Lender Parties]**
By: _____
Name: Maier Tarlow
Title:  Managing Partner

**Gaucho Group Holdings, Inc.**

By: _____
Name: Scott L. Mathis
Title: President & CEO

**Gaucho Group, Inc.**

By: _____
Name: Scott L. Mathis
Title: President & CEO

**InvestProperty Group, LLC**

By: Gaucho Group Holdings, Inc., its Sole and Managing Member

By: _____
Name: Scott L. Mathis
Title: President & CEO

**Algodon Global Properties, LLC**

By: InvestProperty Group, LLC, its Sole and Managing Member

By: Gaucho Group Holdings, Inc., its Sole and Managing Member

By: _____
Name: Scott L. Mathis
Title: President & CEO

8

**CONFIDENTIAL**
**SUBJECT TO FRE 408 & EQUIVALENTS**

**Gaucho Ventures I-Las Vegas, LLC**

By: Gaucho Group Holdings, Inc., its Sole and Managing Member

By: _Scott Mathis_____

Name: Scott L. Mathis
Title: President & CEO


**The Algodon Recoleta, S.R.L.**

By: _Scott Mathis_____

Name: Scott L. Mathis
Title: Authorized Signatory


**Algodon Properties II S.R.L.**

By: _Scott Mathis_____

Name: Scott L. Mathis
Title: Authorized Signatory


**Algodon Wine Estates S.R.L.**

By: _Scott Mathis_____

Name: Scott L. Mathis
Title: Authorized Signatory


**Gaucho Development S.R.L.**

By: _Scott Mathis_____

Name: Scott L. Mathis
Title: Authorized Signatory